UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SARAH BICKRAM,                                                      **Docket No.:**

                                *Plaintiff,*

           -against-                                               **COMPLAINT**

                                                                   **PLAINTIFF DEMANDS**
M.A.C. COSMETICS INC.,                                             **A JURY TRIAL**

                                *Defendant.*
-----------------------------------------------------------------X

      Plaintiff, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

### JURISDICTION AND VENUE

      1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 et seq., as amended ("Title VII") and supplemental jurisdiction over the remainder of Plaintiff's claims Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) and (e), pursuant to 28 U.S.C. §1367.

      2.    Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because the Defendant resides and does business within the Southern District of New York.

      3.    Plaintiff filed a charge of discrimination and retaliation in violation of the law with the Equal Employment Opportunity Commission on June 28, 2017 and Plaintiff was issued a Notice of Right to Sue, which was dated January 26, 2018 and was received on February 7, 2018.

## IDENTITY OF PARTIES

4.      At all relevant times mentioned herein, Plaintiff Sarah Bickram ("Bickram") was and is a resident of the City and State of New York and was employed by Defendant M.A.C. Cosmetics Inc. ("M.A.C.") in one of its retail store at the Roosevelt Field Mall in the County of Nassau, State of New York, until her unlawful termination in June 2013.

5.      At all relevant times mentioned herein, M.A.C. was and is a corporation duly organized and existing under the laws of Delaware and is authorized to and does conduct business in the County and State of New York.

6.      M.A.C. was and is a leading cosmetic manufacturer and professional makeup authority and operates retail stores that employees make up artists, like Bickram.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

7.      Bickram commenced her employment with M.A.C. in or around March 2013 as a freelance Makeup Artist at M.A.C.'s store in the Roosevelt Field Mall in Nassau County and became a full time Makeup Artist at that location in or around September 2013.

8.      At all times during her employment at M.A.C., Bickram was fully qualified for her position, as confirmed by, among other things, her longevity, the positive feedback she received and her positive performance evaluation dated on or about August 7, 2016.

2

9.     In  October 2016, Alfredo Borbon ("Borbon") was named as a Third Key Manager and became one of the managers to whom Bickram directly reported at the store.

10.     Borbon soon began a campaign of humiliating and degrading sexual harassment against Bickram, which included, among other things and only by way of example:

- Coming up behind Bickram while she was at the cash register and **touching her from behind, rubbing his hands up her legs and grabbing her waist, rear and breasts**;

- After Bickram's co-workers joked that she liked to keep things around her clean, Borbon said on a number of occasions that he thought Bickram was "clean" and, **"I bet your pussy smells like that too,"** which was disgusting and humiliating;

- Grabbing Bickram's breasts in front of her co-workers and asking if they were real;

- Hugging Bickram aggressively and holding on to her body way too long for her comfort;

- Rubbing himself against Bickram while sniffing her;

- On six occasions, whispering in Bickram's ear while she was helping customers, saying, **"Mmm I want to bang you on this floor right now;"**

- Staring at Bickram from across the room while biting and licking his lips.

The above are merely examples of the sexual harassment that Bickram endured from Borbon after he began working as a Third Key Manager, which was severe, pervasive and so altered Bickram's workplace as to create a hostile work environment.

11.     Bickram repeatedly expressed to Borbon that his conduct was unwelcome, including telling him not to touch her, speak to her like that or act in that manner, but he would just laugh at Bickram whenever she complained.

12.     On one occasion, in attempt to stop Borbon's vulgar behavior, Bickram said, "You do know I am married. What do you think my husband would say if he knew you were saying this to me?" to which Borbon replied, "He can't do anything to me and he can't do anything about it," making Bickram feel powerless, and then threatened Bickram by saying, "That attitude you have, I'm going to fix it for you."

13.     Additionally, whenever Bickram protested Borbon's sexual harassment or defended herself by walking away or calling him out, Borbon became extremely angry and aggressive towards her and punished Bickram by, among other things, assigning Bickram other people's work, giving her the silent treatment or demanding that Bickram leave the store to do petty errands such as retrieve coffee or food for him, which he never instructed anyone else to do.

14.     In early November 2016, Bickram spoke to the store manager, Shirley Ponce ("Ponce"), about Borbon's actions.

15.     Although Borbon's actions were open and flagrant, Bickram had been concerned about protesting his actions directly to Ponce because Bickram knew that she had a prior friendship with Borbon before she hired him and she clearly favored him among the employees at the store.

4

16.     In response to Bickram's complaint, Ponce said that she would speak with Borbon.

17.     Bickram told her not to mention her name because she feared that Borbon would get mad at her, to which Ponce assured Bickram that she "knew what to say."

18.     Bickram saw Ponce speak to Borbon in the office, after which Borbon came out of the office and said, "I can't fuck with you guys because you guys complain that I'm too touchy feely," and when Bickram replied, "You are a little bit," Borbon turned around and looked at himself in a mirror as if Bickram had not said anything to him.

19.     Despite Ponce's conversation with Borbon, he soon resumed his sexual harassment of Bickram.

20.     Borbon became increasingly more aggressive with Bickram in around December 2016, when, by way of example, he continued touching Bickram and would physically grab her as soon as she walked in the door, and he continued making inappropriate comments and would get angry with Bickram when she told him to stop.

21.     On January 20, 2017, a day that Bickram was not working, Bickram stopped by the mall to purchase some items for her birthday party later that night and she went to the M.A.C. store to purchase some makeup.

5

22.     As Bickram was talking to a group of her co-workers, Borbon looked through Bickram's shopping bags and then actually pulled down the collar of the mock turtle neck sweater she was wearing to look down her shirt, in front of all her co-workers, which was mortifying to Bickram and she immediately pushed him away while Bickram's co-worker, Marissa, said "Jesus, Alfredo [Borbon], can you let her alone?  Can you let her live?"

23.     As a result of Bickram's unsafe workplace environment and fear of Borbon, Bickram became so overwhelmed and filled with fear that she started having anxiety attacks at work, and had one anxiety attack in December and another in January, and Bickram even had one while driving home from work.

24.     Shortly after, on February 5, 2017, Borbon grabbed Bickram as soon as she entered the store and asked, "What's your attitude about?"

25.     Bickram became very upset and went to the lockers at the back of the store, and while there, Bickram's co-worker, Stephanie Hammell ("Hammell"), approached her and mentioned that Borbon did the same things to her, but not as much as he did to Bickram , and Hammell pointed out that all the staff thought Borbon was obsessed with Bickram.

26.     The same day, as soon as Ponce returned from lunch, Bickram met with her, explained what had been happening and asked if she would talk to Borbon, as the situation was becoming progressively worse, and Ponce agreed that Borbon's behavior was unacceptable and that

she would speak to him.

27.     The next time Bickram saw Borbon later that day, he was visibly angry with Bickram and only spoke to her to order her around, making it clear to Bickram that Ponce had spoken to Borbon and that he would punish Bickram again, and that Ponce had not done anything to correct Bickram's workplace.

28.     On February 8, 2017, Bickram spoke to her doctor about, among other things, the panic attacks she was experiencing that had been caused by her work environment, and her doctor prescribed anti-anxiety medication, put Bickram on a three-month medical leave and referred her to a psychiatrist.

29.     While Bickram was on leave, she sent an email to Jeanine Vespucci ("Vespucci"), Manager of Retail Operations and Ponce's supervisor, on February 27, 2017, complaining about Borbon's conduct and Ponce's failure to stop him.

30.     Vespucci then put Bickram in touch with Christine Lin ("Lin") of M.A.C.'s human resources department and Bickram spoke with Lin about Borbon's sexual harassment.

31.     Bickram repeatedly followed up with Lin about the investigation and about what action M.A.C. would take to protect Bickram upon her return to work following the conclusion of her medical leave, yet despite Lin telling Bickram that the investigation was ongoing, it was clear

that nothing was happening, as Borbon remained at the store and suffered no consequences, and Bickram was never even told what Borbon's version of events was or given a chance to respond.

32.     It became painfully clear that M.A.C. would not take any action against Borbon.

33.     In fact, while Bickram was coming to the end of her leave, she learned that Borbon was actually being promoted at a different store, notwithstanding her complaints, and that M.A.C. was letting Borbon smear her name by telling employees that he had a "relationship" with Bickram that went bad and that is why Bickram complained about him, which was an absolute lie.

34.     Bickram was told that she would be returning to the store run by Ponce, who had protected Borbon, which was intimidating to Bickram as she knew that Ponce and Borbon remained close, as confirmed by the fact that Bickram saw them holding hands at the mall shortly before her return to work, so that Bickram had no reason to believe that Ponce would take any action to protect Bickram, especially since she had not done so earlier.

35.     Bickram asked Vespucci and Lin if Borbon would be kept out of the store to which she was to return, and M.A.C. said no and that the only way Borbon could be kept out of the store was if Bickram obtained an order of protection against him.

36.     After Bickram's doctor cleared her to work, Bickram returned to M.A.C. on Wednesday, June 14, 2017.

37.     Just one hour after her return, Bickram met with Ponce and Vespucci, who engaged Bickram in an aggressive manner and asked her to sign a piece of paper about her "productivity," which was incredibly hostile given that Bickram had been on leave since February 8.

38.     Vespucci then dismissed Ponce from the room and Bickram again raised her concerns about seeing Borbon coming to the store again, to which Vespucci responded that Bickram could hide in the back of the store, and when Bickram responded that it doing so would impact her work, Vespucci dismissively stated, "You're just going to have to deal with it, honey."

39.     When Bickram said that this was not a safe work environment for her, Vespucci told her that maybe she could move to a position in Manhattan, but it was not guaranteed that there would be any full time positions in that district.

40.     Outrageously, Vespucci then told Bickram that should seek a restraining order and said, "You know what, Sarah, I just don't get it.  Why didn't you go to the police?" as if Bickram was not telling the truth, which was incredibly upsetting to her since Bickram had thought going to M.A.C. directly was the proper option.

41.     Bickram was left with the stark choice of having to work in the store managed by Ponce, who had allowed Borbon to harass her and who remained close to him, or hope that there might be a position for her in Manhattan, which did not appear likely and where she would have to restart her career without the clients she had built up over years.

9

42.     Vespucci stated that Bickram had to "figure out" what she wanted to do and to call her at 11:00 am the next day, after she was done with her conference calls, so Bickram could let Vespucci know what her "decision" was.

43.     Bickram spoke with Vespucci the next day and she again pressed Bickram on what she wanted to do, at which time Bickram told her that she could no longer remain in that toxic work environment.

44.     Bickram was constructively discharged on Thursday, June 15, 2017.

45.     As a result of M.A.C.'s discriminatory and retaliatory conduct, Bickram has suffered the adverse effects of sexual harassment and retaliation and the quality of her life, self-esteem and self-respect have been impacted, all of which will continue into the future and remain a source of humiliation, anguish and financial loss to Bickram.

46.     Here, the acts of M.A.C. were so egregious and were done so clearly in the face of a perceived risk that its actions would violate Bickram's protected rights under the law, that, in addition to all the damages inflicted upon Bickram and in addition to all the measure of relief to which Bickram may properly be entitled herein, M.A.C. should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter M.A.C. and others similarly situated from engaging in such conduct in the future.

**AS AND FOR THE FIRST CAUSE OF ACTION ON
BEHALF OF BICKRAM AGAINST M.A.C. FOR
SEX DISCRIMINATION IN VIOLATION OF  TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-2 ET SEQ.**

47.    Bickram repeats, realleges and incorporates in full paragraphs 1 through 46 of this Complaint, as though fully set forth at length herein.

48.    The entirety of the acts which constitute and form this cause of action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Bickram while she was in the course of her employment with M.A.C.

49.    Bickram was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sexual harassment that was permitted by M.A.C., the effect of which severely or pervasively altered the terms, conditions and privileges of Bickram's employment.

50.    The conduct that M.A.C. took against Bickram that forms the basis of this cause of action was unwelcome to her, a fact which M.A.C. knew or should have known.

51.    M.A.C. created and allowed a hostile work environment Bickram reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to M.A.C.

11

52.     M.A.C. was obligated to maintain a workplace free of hostility and to prevent its employees from violating any laws designed to prevent unlawful discrimination in employment, yet M.A.C. failed to effectively enforce a program against discrimination and harassment and failed to take any effective remedial action with respect to the discrimination described herein, despite Bickram's repeated requests for such discrimination to cease.

53.     As a proximate result of M.A.C.'s conduct, Bickram has been adversely affected in her employment and in her normal life's pursuits, and Bickram believes that the injuries she incurred by being subjected to M.A.C.'s conduct complained of herein has and will continue to have a devastating effect upon her professional career, as well as the quality of her life.

54.     Bickram was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of M.A.C.'s outrageous conduct in violation of Bickram's human rights, all of which impacted her well-being and the quality of her life.

55.     The aforementioned acts of M.A.C. constitute unlawful discrimination on the basis of sex against Bickram in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 et seq., as amended ("Title VII"), which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

56.     As a direct and proximate result of M.A.C.'s violation of Title VII, M.A.C. is liable to Bickram for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

57.     Here, the acts of M.A.C. were so egregious and were done with such bad-faith and/or reckless indifference for Bickram's protected rights under Title VII, that, in addition to all the damages inflicted upon Bickram and in addition to all the measures of relief to which Bickram may properly be entitled herein, M.A.C. should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter M.A.C. and others similarly situated from engaging in such conduct in the future.

58.     Bickram, therefore, seeks compensatory damages in this cause of action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest, in this cause of action.

**AS AND FOR THE SECOND CAUSE OF ACTION ON
BEHALF OF BICKRAM AGAINST M.A.C. FOR SEX
DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE
<u>15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)</u>**

59.     Bickram repeats, re-alleges and incorporates in full paragraphs 1 through 46 of this Complaint, as though fully set forth at length herein.

60.     The entirety of the acts which constitute and form this cause of action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Bickram while she was in the course of her employment with M.A.C.

61.     Bickram was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sexual harassment that was permitted by M.A.C., the effect of which severely or pervasively altered the terms, conditions and privileges of Bickram's employment.

62.     The conduct that M.A.C. took against Bickram that forms the basis of this cause of action was unwelcome to her, a fact which M.A.C. knew or should have known.

63.     M.A.C. created and allowed a hostile work environment, which Bickram reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to M.A.C.

64.     M.A.C. was obligated to maintain a workplace free of hostility and to prevent its employees from violating any laws designed to prevent unlawful discrimination in employment, yet M.A.C. failed to effectively enforce a program against discrimination and harassment and failed to take any effective remedial action with respect to the discrimination described herein, despite Bickram's repeated requests for such discrimination to cease.

14

65.    Bickram was caused to suffer emotional injuries, all of which humiliated and otherwise intimidated and degraded Bickram because of M.A.C.'s outrageous conduct in violation of Bickram's human rights, and which impacted on her health, well-being and the quality of her life.

66.    The aforementioned acts of M.A.C. constitute unlawful sex discrimination against Bickram in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("New York State Human Rights Law"), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For an employer . . . because of the . . . sex . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

67.    As a direct and proximate result of M.A.C.'s violation of the New York State Human Rights Law §296(1)(a), Bickram was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of M.A.C.'s discriminatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Bickram alleges to be in the amount of Three Million Dollars ($3,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF BICKRAM AGAINST M.A.C. FOR RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-3 ET SEQ.

68.     Bickram repeats, realleges and incorporates in full paragraphs 1 through 46 as though fully set forth at length herein.

69.     Each time that Bickram complained of the discriminatory conduct to which she was subjected, she was engaged in a protected activity under Title VII, of which M.A.C. was aware.

70.     As a proximate result of Bickram engaging in protected activities under Title VII, Bickram suffered material adverse employment action, which included, among other things, ultimately being terminated to punish her for protesting the humiliating, insulting and discriminatory conduct she was forced to endure, all of which was causally connected to her complaints of discrimination.

71.     M.A.C.'s unlawful conduct had a devastating impact on Bickram's employment, her emotional well-being, the quality of her life and her life's normal pursuits and Bickram believes that the injuries inflicted upon her, which were a direct result of the occurrences complained of herein, have and will continue to cause Bickram significant damage.

72.     The aforementioned acts of M.A.C. constitute unlawful discriminatory retaliation against Bickram in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3 et seq.,

16

as amended, which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

73.     As a direct and proximate result of M.A.C.'s violation of Title VII, M.A.C. is liable to Bickram for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

74.     Here, the acts of M.A.C. were so egregious and were done with such bad-faith and/or reckless indifference for Bickram's protected rights under Title VII, that, in addition to all the damages inflicted upon Bickram and in addition to all the measures of relief to which Bickram may properly be entitled herein, M.A.C. should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter M.A.C. and others similarly situated from engaging in such conduct in the future.

75.     Bickram, therefore, seeks compensatory damages in this cause of action, including among other things, for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest, in this cause of action.

17

**AS AND FOR THE FOURTH CAUSE OF ACTION ON BEHALF**
**OF BICKRAM AGAINST M.A.C. FOR RETALIATION**
**IN VIOLATION OF CHAPTER 18, ARTICLE 15 OF THE**
**NEW YORK STATE EXECUTIVE LAW §296(1)(e)**

76.     Bickram repeats, re-alleges and incorporates in full paragraphs 1 through 46 of this Complaint, as though fully set forth at length herein.


77.     Each time that Bickram complained of the discriminatory conduct to which she was subjected, she was engaged in a protected activity under the New York State Human Rights Law, of which M.A.C. was aware.


78.     As a proximate result of Bickram engaging in protected activities under the New York State Human Rights Law, Bickram suffered material adverse employment action, which included, among other things, ultimately being terminated to punish her for protesting the humiliating, insulting and discriminatory conduct she was forced to endure, all of which was causally connected to her complaints of discrimination.


79.     M.A.C.'s unlawful conduct has adversely affected her employment, her emotional well-being, the quality of her life and her life's normal pursuits and Bickram believes that the injuries inflicted upon her, which were a direct result of the occurrences complained of herein, have and will continue to cause Bickram significant damage.

18

80.     The aforementioned acts of M.A.C. constitute unlawful discriminatory retaliation against Bickram in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(e), which provides, inter alia, that:

> It shall be unlawful discriminatory practice . . . for any employer . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article . . .

81.     As a direct and proximate result of M.A.C.'s violation of the New York State Human Rights Law §296(1)(e), Bickram was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of M.A.C.'s discriminatory conduct and retaliation did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Bickram alleges to be in the amount of Three Million Dollars ($3,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

**WHEREFORE**, Plaintiff Sarah Bickram demands judgment against Defendant M.A.C. on the First Cause of Action in an award to be determined at a trial of this matter; on the Second Cause of Action the sum of Three Million Dollars ($3,000,000) in compensatory damages, plus attorney's fees, pre-judgment interest and the costs of this action as is permitted under the law; on the Third Cause of Action in an award to be determined at a trial of this matter; on the Fourth Cause of Action in the sum of Three Million Dollars ($3,000,000) in compensatory damages, plus attorney's fees, pre-judgment interest and the costs of this action as is permitted under the law; and for such othera

and further relief that the Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.

SCHWARTZ PERRY & HELLER, LLP
*Attorneys for Plaintiff*

By:   */s Brian Heller*
    BRIAN HELLER (4004)
    DAVIDA S. PERRY (1879)
    3 Park Avenue, 27th Floor
    New York, New York 10016
    (212) 889-6565